No. 24-50580

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

JESUS YANEZ,
*Plaintiff-Appellant*

v.

DISH NETWORK, L.L.C., DOING BUSINESS AS DISH NETWORK;
ECHOSPHERE, L.L.C., DOING BUSINESS AS DISH Network,
*Defendants-Appellees*.

---

On Appeal from the United States District Court
For the Western District of Texas, El Paso Division
Civil Action No. EP-21-0129-FM, The Honorable Frank Montalvo

---

## BRIEF OF DEFENDANTS-APPELLEES
## DISH NETWORK L.L.C. AND ECHOSPHERE L.L.C.

---

David M. Noll
Stephanie A. Waller
HAGAN NOLL & BOYLE, LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478

COUNSEL FOR DEFENDANTS-APPELLEES

No. 24-50580

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

JESUS YANEZ,
*Plaintiff-Appellant*

v.

DISH NETWORK, L.L.C., DOING BUSINESS AS DISH NETWORK;
ECHOSPHERE, L.L.C., DOING BUSINESS AS DISH Network,
*Defendants-Appellees.*

On Appeal from the United States District Court
For the Western District of Texas, El Paso Division
Civil Action No. EP-21-0129-FM, The Honorable Frank Montalvo

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case as described by the fourth sentence of Fifth Circuit Rule 28.2.1. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff-Appellant | Defendants-Appellees |
|---|---|
| Jesus Yanez | DISH Network L.L.C. |
|  | Echosphere L.L.C. |

| **Counsel for Plaintiff-Appellant** | **Counsel for Defendants-Appellees** |
|---|---|
| Katie P. Klein | David M. Noll |
| William D. Mount, Jr. | Stephanie A. Waller |
| Macarena Ortiz | HAGAN NOLL & BOYLE, LLC |
| DALE & KLEIN, L.L.P. | 820 Gessner, Suite 940 |
| 1100 E. Jasmine Ave., Suite 202 | Houston, Texas 77024 |
| McAllen, Texas 78501 | |

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure, Defendants-Appellees DISH Network L.L.C. and Echosphere L.L.C. hereby make the following disclosures:

1.     DISH Network L.L.C. and Echosphere L.L.C. are both wholly owned subsidiaries of DISH DBS Corporation, which is a wholly owned subsidiary of DISH Orbital Corporation. DISH Orbital Corporation is a wholly owned subsidiary of DISH Network Corporation.

2.     DISH Network Corporation is a wholly owned subsidiary of EchoStar Corporation. EchoStar Corporation is a publicly traded company whose Class A Common Stock is listed on the NASDAQ exchange under the ticker symbol "SATS." As such, periodic updates with respect to ownership of SATS securities required by the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder are publicly available at the website of the Securities and Exchange Commission located at www.sec.gov (the "SEC Filings").

3.     The below sets forth, to the best of present knowledge and belief, as of January 2, 2025 those persons (as defined by 17 CFR §240.13d-1) with a beneficial

ownership of ten percent or greater of SATS's Class A Common Stock (on an as converted basis), provided that the below is qualified in its entirety by any and all applicable disclosures made in SATS's SEC Filings.

a. Charles W. Ergen 9601 S. Meridian Blvd., Englewood, CO 80112

b. Cantey M. Ergen 9601 S. Meridian Blvd., Englewood, CO80112

c. BlackRock, Inc. 50 Hudson Yards, New York, NY 10001

*/s/David M. Noll*
David M. Noll
Attorney of Record for Defendants-Appellees DISH Network L.L.C. and Echosphere L.L.C.

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees DISH Network L.L.C. and Echosphere L.L.C. do not believe that oral argument is necessary to assist with the Court's decision-making process. The facts and legal arguments are adequately presented in the briefs and record, and the decision process would not be significantly altered by oral argument. *See* Fed. R. App. P. 34(a)(2)(C). However, counsel for Defendants-Appellees welcomes the opportunity to participate in oral argument to the extent the Court believes it would aid in reaching a just determination of this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................... v

TABLE OF CONTENTS ......................................................................................vi

TABLE OF AUTHORITIES ................................................................................ix

JURISDICTIONAL STATEMENT ....................................................................... 1

ISSUES PRESENTED FOR REVIEW .................................................................. 2

STATEMENT OF THE CASE .............................................................................. 3

    I.      Yanez Signs an Arbitration Agreement Upon Being Hired by DISH ....... 3

    II.     DISH Moves to Compel Arbitration After Yanez Filed Suit in Court ..... 4

    III.    Yanez Files Multiple Motions in Opposing Arbitration ........................... 6

    IV.    The District Court Grants DISH's Motion to Compel Arbitration and
           Stays the Case .......................................................................................... 7

    V.     While the Arbitration is Pending, the District Court Dismisses the
           Action Without Prejudice .......................................................................... 8

SUMMARY OF THE ARGUMENT ...................................................................... 9

ARGUMENT ...................................................................................................... 11

    I.      Standard of Review for an Order Compelling Arbitration ...................... 11

    II.     The Federal Arbitration Act Governs the Arbitration Agreement ........... 12

    III.    The District Court Correctly Found the Arbitration Agreement is
           Binding and Enforceable on All Parties .................................................. 13

A. DISH Established the Existence of a Valid Arbitration Agreement Between the Parties .............................................14

B. Yanez's Claims Against DISH Fall Within the Scope of the Arbitration Agreement .........................................16

IV. The District Court Correctly Found DISH May Seek to Enforce the Arbitration Agreement..............................................17

A. EchoStar Communications Corporation changed its name to DISH Network Corporation in 2008 ...........................................19

B. Under the terms of the arbitration agreement, DISH and Echosphere are affiliates of DISH Network Corporation (f.k.a. EchoStar Communications Corporation)...........................................22

V. The District Court Correctly Found DISH's Signature Is Not Required to Form a Valid and Enforceable Arbitration Agreement.......................25

VI. Yanez Failed to Properly Put the Making of the Arbitration Agreement at Issue ........................................................31

VII. The District Court Correctly Found the Arbitration Agreement is Not Illusory..........................................................34

VIII. The District Court Correctly Found the Provision Permitting Either Party to Recover Attorneys' Fees Incurred in Successfully Compelling Arbitration is "Valid and Enforceable"....................................38

IX. The District Court's Use of Its Inherent Powers to Dismiss the Case Was Consistent with Well-Established Law ...........................................41

A. Standard of Review for a Rule 59(e) Motion......................................41

B. Yanez Failed to Establish Any Manifest Errors in the District Court's Order Dismissing the Case....................................42

C. Yanez Failed to Show the District Court Did Not Follow Controlling Case Law..........................................................................44

CONCLUSION ....................................................................................46

CERTIFICATE OF SERVICE ...............................................................48

ELECTRONIC CERTIFICATION ........................................................48

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT.................49

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Acosta v. Odle Mgmt. Group, LLC,*
No. EP-19-CV-265-PRM, 2020 WL 4060782 (W.D. Tex. July 20, 2020)...31

*Alford v. Dean Witter Reynolds, Inc.,*
975 F.2d 1161 (5th Cir. 1992) ....................................................................43

*Am. Heritage Life Ins. Co. v. Orr,*
294 F.3d 702 (5th Cir. 2002) ......................................................................11

*Amazon.com Services, LLC v. De La Victoria,*
No. 14-23-00493-CV, 2024 WL 3941376 (Tex. App.—Houston
[14th Dist.] Aug. 27, 2024, no pet.)............................................................13

*Apache Bohai Corp., LDC v. Texaco China, B.V.,*
330 F.3d 307 (5th Cir. 2003) .........................................................................1

*Cal. Fina Grp., Inc. v. Herrini,*
379 F.3d 311 (5th Cir. 2004) ......................................................................11

*Caley v. Gulfstream Aerospace Corp.,*
428 F.3d 1359 (11th Cir. 2005) ..................................................................25

*Carrigan v. Live Oak Nursing Ctr., LLC,*
No. 2:15-CV-319, 2015 WL 6692199 (S.D. Tex. Nov. 3, 2015).................24

*Carter v. Countrywide Credit Indus., Inc.,*
362 F.3d 294 (5th Cir. 2004) ......................................................................41

*Chester v. DirecTV, L.L.C.,*
607 F. App'x 362 (5th Cir. 2015) ...........................................................31, 32

*DISH Network L.L.C. v. Alexander,*
No. 13-20-00240-CV, 2021 WL 3085763 (Tex. App.—Corpus Christi–
Edinburg July 22, 2021, pet. denied)...............................................21, 28, 29

*Dish Network L.L.C. v. Brenner*,
 No. 13-12-00564-CV, 2013 WL 3326640 (Tex. App.—Corpus
 Christi-Edinburg June 27, 2013, no pet.) .................................................14, 29

*Doe v. Tonti Mgmt. Co., L.L.C.*,
 24 F.4th 1005 (5th Cir. 2022) .................................................................2, 46

*Escalera v. JD Byrider Dfw-Texas, Inc.*,
 No. 14-817, 2014 WL 12588317 (N.D. Tex. June 16, 2014).......................40

*First Options of Chicago, Inc. v. Kaplan*,
 514 U.S. 938 (1995)....................................................................................14

*Firstlight Fed. Credit Union v. Loya*,
 478 S.W.3d 157 (Tex. App.—El Paso 2015, no pet.) ..................................26

*Flores v. BJ's Rest. Operations Co.*,
 No. 23-50038, 2023 WL 6533452 (5th Cir. Oct. 6, 2023) ...............26, 28, 30

*Genesco, Inc. v. Kakiuchi & Co.*,
 815 F.2d 840 (2d Cir. 1987)...........................................................................25

*Glassell Producing Co. v. Jared Res., Ltd.*,
 422 S.W.3d 68 (Tex. App.—Texarkana 2014, no pet.)................................17

*Green Tree Fin. Corp.–Alabama v. Randolph*,
 531 U.S. 79 (2000)..........................................................................................1

*Griffin v. Senior Living Properties, LLC*,
 No. 6:17-190, 2017 WL 3721989 (E.D. Tex. Aug. 29, 2017).....................40

*Hi Tech Luxury Imports, LLC v. Morgan*,
 No. 03-19-00021-CV, 2019 WL 1908171 (Tex. App.—Austin Apr. 30,
 2019, no pet.) ...............................................................................................27

*Hines v. Stamos*,
 111 F.4th 551 (5th Cir. 2024) .......................................................................44

*Huckaba v. Ref-Chem, L.P.*,
 892 F.3d 686 (5th Cir. 2018) ..............................................................13, 27

*Iguana Joe's Crosby, Inc. v. Martinez,*
No. 14-23-00636-CV, 2024 WL 4891088 (Tex. App.—Houston
[14th Dist.] Nov. 26, 2024, no pet. h.)............................................................12

*In re 24R, Inc.,*
324 S.W.3d 564 (Tex. 2010)......................................................15, 34, 35, 37

*In re AdvancePCS Health, L.P.,*
172 S.W.3d 603 (Tex. 2005)...........................................................................26

*In re Dallas Peterbilt, Ltd., L.L.P.,*
196 S.W.3d 161 (Tex. 2006)...........................................................................15

*In re DISH Network*,
563 S.W.3d 433 (Tex. App.—El Paso 2018, orig. proceeding) .................14

*In re H&R Block Fin. Advisors, Inc.,*
235 S.W.3d 177 (Tex. 2007)...........................................................................21

*In re Macy's Tex., Inc.,*
291 S.W.3d 418 (Tex. 2009)....................................................................19, 25

*In re ReadyOne Indus., Inc.,*
294 S.W.3d 764 (Tex. App.—El Paso 2009, no pet.) ..................................22

*In re Rubiola,*
334 S.W.3d 220 (Tex. 2011)...........................................................................12

*Inv. Partners, L.P. v. Glamour Shots Licensing, Inc.*,
298 F.3d 314 (5th Cir. 2002) .........................................................................10

*Klein v. Nabors Drilling USA L.P.,*
710 F.3d 234 (5th Cir. 2013) .........................................................................13

*Lewis v. Rawson,*
564 F.3d 569 (2d Cir. 2009)...........................................................................42

*Link v. Wabash R. Co.,*
370 U.S. 626 (1962).........................................................................42, 43, 45

xi

*Lizalde v. Vista Quality Markets,*
746 F.3d 222 (5th Cir. 2014) .........................................................................38

*Long v. Simmons*,
77 F.3d 878 (5th Cir. 1996) ...........................................................................43

*McCann v. Am. Homes 4 Rent, L.P.*,
No. 4:19-CV-1879, 2020 WL 1429494 (S.D. Tex. Mar. 19, 2020) .............36

*Medical Dev. Corp. v. Indus. Molding Corp.,*
479 F.2d 345 (10th Cir. 1973) .......................................................................25

*Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.,*
460 U.S. 1 (1983)...........................................................................................16

*Nelson v. Watch House Int'l, L.L.C.,*
815 F.3d 190 (5th Cir. 2016) ...................................................................15, 34

*Norris v. Causey*,
869 F.3d 360 (5th Cir. 2017) .........................................................................12

*Orozco v. JP Morgan Chase Bank, N.A.*,
No. H-20-1961, 2020 WL 6044332 (S.D. Tex. Oct. 13, 2020)....................33

*Playboy Enterpises, Inc. v. Sanchez-Campuzano,*
No. M-01-226, 2010 WL 11458755 (S.D. Tex. Nov. 23, 2010)...................22

*Rasmusson v. LBC PetroUnited, Inc.,*
124 S.W.3d 283 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).......40

*Rodgers-Glass v. Conroe Hosp. Corp.,*
No. H-14-3300, 2015 WL 4190598 (S.D. Tex. July 10, 2015)...............12, 14

*Rollins v. Home Depot USA,*
8 F.4th 393 (5th Cir. 2021) .............................................................12, 42, 43

*Rosales v. Coca-Cola Sw. Beverages LLC*,
No. EP-18-CV-361-PRM, 2019 WL 1493359 (W.D. Tex. Apr. 3, 2019) ....31

*Schiller v. Physicians Res. Grp., Inc.,*
   342 F.3d 563 (5th Cir. 2003) ........................................................44

*Shuler v. Meritage Homes of Texas, L.L.C.,*
   No. A-09-CA-401 LY, 2009 WL 10669447 (W.D. Tex. Sept. 3, 2009)......40

*Singleton v. Louisiana,*
   No. 24-30304, 2024 WL 4891185 (5th Cir. Nov. 26, 2024) ........................41

*SK Plymouth LLC v. Simmons,*
   605 S.W.3d 706 (Tex. App.—Houst. [1st Dist.] 2020) ..................................28

*Smith v. Spizzirri,*
   144 S. Ct. 1173 (2024) ........................................................2, 9, 11, 43, 44, 45

*Soni v. Solera Holdings, L.L.C.,*
   No. 21-10428, 2022 WL 1402046 (5th Cir. May 4, 2022)...............11, 25, 28

*Sunburst Media Mgmt., Inc. v. Devine,*
   No. 3:08-CV-1170G, 2010 WL 1962499 (N.D. Tex. May 17, 2010)...........34

*Sw. Elec. Power Co. v. Certain Underwriters at Lloyds of London,*
   772 F.3d 384 (5th Cir. 2014) ..........................................................................1

*Templet v. HydroChem Inc.,*
   367 F.3d 473 (5th Cir. 2004) ........................................................................42

*Thick v. Dolgencorp of Texas, Inc.,*
   No. 4:16-CV-00733, 2017 WL 108297 (E.D. Tex. Jan. 11, 2017) ..............32

*Tinder v. Pinkerton Sec.,*
   305 F.3d 728 (7th Cir. 2002) ........................................................................25

*Tricon Energy Ltd. v. Vinmar Int'l, Ltd.,*
   718 F.3d 448 (5th Cir. 2013) ........................................................................26

*Trujillo v. Volt Mgmt. Corp.,*
   No. EP-19-CV-00337-DCG, 2020 WL 1906097 (W.D. Tex. Apr. 17, 2020),
   *aff'd*, 846 Fed. Appx. 233 (5th Cir. 2021) ....................................................15

*Valero Ref., Inc. v. M/T Lauberhorn*,
    813 F.2d 60 (5th Cir. 1987) ....................................................................25

*Walker v. Tao Operating, L.L.C.*,
    No. 1:13-CV-6319, 2014 WL 11904577 (E.D. Tex. Aug. 14, 2014)..........32

*Wije v. Stuart*,
    694 Fed. Appx. 234 (5th Cir. 2017)........................................................12

**Rules and Statutes**

9 U.S.C. § 1 ............................................................................................13

9 U.S.C. § 2 ............................................................................................26

9 U.S.C. § 16 ........................................................................................1, 2

17 C.F.R. § 240.13d-1 ............................................................................. iii

Fed. R. App. P. 26.1(a) ........................................................................... iii

Fed. R. App. P. 28(a)(8)(A) ...................................................................12

Fed. R. App. P. 32(a)(5) .........................................................................49

Fed. R. App. P. 32(a)(6) .........................................................................49

Fed. R. App. P. 32(a)(7)(B)(i)................................................................49

Fed. R. App. P. 34(a)(2)(C) ....................................................................v

Fed. R. Civ. P. 41(b) ..............................................................................43

Fed. R. Civ. P. 59(e)..............................................................2, 8, 41, 42, 44

Fed. R. Civ. P. 83 ...................................................................................45

Fed. R. Evid. 803(6).3............................................................................10

5th Cir. R. 25.2.1....................................................................................48

5th Cir. R. 25.2.13 ................................................................................................48

5th Cir. R. 28.2.1 ................................................................................................. ii

5th Cir. R. 32.2 ..................................................................................................49

## JURISDICTIONAL STATEMENT

Section 16 of the Federal Arbitration Act ("FAA") "governs appellate review of arbitration orders." *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 309 (5th Cir. 2003) (citing 9 U.S.C. § 16). Section 16(a)(3) permits appeals "taken from a final decision with respect to an arbitration." 9 U.S.C. § 16(a)(3). The Supreme Court has defined a "final decision" as meaning "a decision that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp.–Alabama v. Randolph*, 531 U.S. 79, 86 (2000) (internal quotation marks omitted). This Court has held that "[a] district court order that compels arbitration and dismisses or closes a case outright possesses finality and confers jurisdiction on this court." *Sw. Elec. Power Co. v. Certain Underwriters at Lloyds of London*, 772 F.3d 384, 387 (5th Cir. 2014).

On June 2, 2021, the United States District Court for the Southern District of Texas granted Defendants-Appellees' motion to compel arbitration and ordered this action "stayed, pending arbitration" and transferred the case to the United States District Court for the Western District of Texas. ROA.630-31. On March 7, 2024, while the arbitration was still pending, the district court entered a "Final Judgment and Dismissal" ordering the case be "dismissed without prejudice" ROA.653-654. Therefore, this Court currently has jurisdiction to review the arbitration-related

orders on appeal because after arbitration was compelled and the case was stayed, an order was later entered dismissing the case. *See* 9 U.S.C. § 16(a)(3).

However, Plaintiff-Appellant is appealing both the dismissal of the case, arguing "the case should be reinstated," and the order granting the motion to compel arbitration. Brief 35. Were the Court to find the case should be reinstated and a stay entered, then presumably the Court would consequently lack appellate jurisdiction over the order granting the motion to compel as it would no longer be appealable under this Court's precedent. *See, e.g., Doe v. Tonti Mgmt. Co., L.L.C.*, 24 F.4th 1005, 1009 (5th Cir. 2022) ("Our precedent interpreting § 16 of the FAA is clear: orders compelling arbitration that stay and administratively close a civil action pending arbitration are interlocutory and unappealable.") (citing cases).

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court correctly determined the parties agreed to enter into a valid and enforceable arbitration agreement that requires Plaintiff-Appellant to submit his legal claims against Defendants-Appellees to arbitration.

2. Whether the district court properly (a) utilized its inherent power to manage its own affairs in dismissing the action without prejudice, and (b) denied Appellant's motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59 (e) in light of the Supreme Court's recent decision in *Smith v. Spizzirri*, 144 S. Ct. 1173 (2024).

2

# STATEMENT OF THE CASE

## I.     Yanez Signs an Arbitration Agreement Upon Being Hired by DISH

Defendant-Appellee DISH Network L.L.C. ("DISH") requires all newly hired employees to enter into a written arbitration agreement as a condition of their employment. ROA.117. On May 29, 2001, DISH offered Plaintiff-Appellant Jesus Yanez ("Yanez") a position with its customer service center in El Paso, Texas.[1] ROA.21. That same day, in consideration of the offer of employment by DISH, Yanez signed a document titled "Mandatory Arbitration of Disputes—Waiver of Rights Agreement" ("arbitration agreement") thereby agreeing to submit employment-related claims to binding arbitration. ROA.119-20. The arbitration agreement provides as follows:

> In consideration of [Yanez's] employment by EchoStar (and/or any of its affiliates) as good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, [Yanez] and EchoStar agree that any claim, controversy and/or dispute between them, arising out of and/or in any way related to [Yanez's] application for employment, employment and/or termination of employment, whenever and wherever brought, shall be resolved by arbitration.

ROA.119.

The arbitration agreement signed by Yanez bears the name "ECHOSTAR" on the letterhead and states the agreement "is between EchoStar Communications

---

[1] While Yanez contends in his opening brief that he was hired by EchoStar Communications Corporation, his Original Petition states to the contrary: "On or about May 29, 2001, DISH NETWORK (hereinafter "DISH") hired Plaintiff Jesus Yanez…" ROA.21-22.

Corporation and all of its affiliates (the term 'affiliates' means companies controlling, controlled by or under common control with, EchoStar Communications Corporation) . . . and Yanez." ROA.119. EchoStar Communications Corporation later changed its name to DISH Network Corporation in 2008, as is well-documented in the public record. ROA. 79, 82, 94. Accordingly, the arbitration agreement signed by Yanez in 2001, prior to the corporate name change, bore the name "ECHOSTAR" rather than "DISH." DISH and Defendant-Appellee Echosphere L.L.C.[2] ("Echosphere") (collectively referred to with DISH Network L.L.C. as "DISH" herein for ease of reference) are both 100% owned and controlled by DISH Network Corporation (f.k.a. EchoStar Communications Corporation) and are considered affiliates as defined in the arbitration agreement. ROA.96, 114.

By the time of his performance-related termination in 2018, Yanez was the Senior Operations Manager at DISH's customer service center in El Paso, Texas. ROA.22. His last day of employment with DISH was May 4, 2018. ROA.25.

## II.     DISH Moves to Compel Arbitration After Yanez Filed Suit in Court

Yanez filed an original petition in the 138th District Court of Cameron County, Texas on September 15, 2020, bringing claims for retaliation and discrimination based on age and national origin against DISH. ROA.19. DISH

---

[2] Echosphere is a pay-agent entity and an affiliate of DISH Network L.L.C. ROA.114.

removed the state court action to the Brownsville Division of the Southern District of Texas on October 29, 2020. ROA.8.

On December 1, 2020, DISH filed a motion to compel arbitration of Yanez's claims. ROA.58. With its motion, DISH submitted the declaration of Senior Human Resources Manager Katherine Leyba, who oversaw the El Paso site while Yanez was the Senior Operations Manager, to authenticate the arbitration agreement. ROA.117-118. DISH also submitted the declaration of Kimberly Culig, Senior Manager of Securities and Exchange Commission ("SEC") Reporting at DISH Network Corporation, and attached supporting documents establishing that DISH and Echosphere were affiliates of EchoStar Communications Corporation at the time Yanez executed the arbitration agreement and remained affiliates after the corporate name change in 2008. ROA.113-115.

On January 19, 2021, Yanez filed his opposition to the motion to compel arbitration generally arguing that (1) the arbitration agreement was an unauthenticated hearsay document, (2) the arbitration agreement was not signed by all parties, (3) DISH and Echosphere were not proper parties to the arbitration agreement, (4) the arbitration agreement violates state law, (5) the arbitration agreement is illusory, and (6) the waiver of common law damages is impermissible. ROA.134-152.

DISH filed a reply on January 26, 2021, responding to Yanez's multitude of arguments. ROA.262-279. In rebutting Yanez's argument that DISH was not a party to the arbitration agreement, DISH relied on the publicly filed documents submitted with the motion to compel arbitration that conclusively establish both DISH and Echosphere, including all preceding organizational forms of these entities, have been and continue to be companies controlled by or under common control with DISH Network Corporation (f.k.a. EchoStar Communications Corporation), and therefore are affiliates who may enforce the Arbitration Agreement against Yanez. ROA.96, 114.

## III.    Yanez Files Multiple Motions in Opposing Arbitration

While DISH's motion to compel arbitration was pending, on January 26, 2021, Yanez filed a motion to compel DISH to respond to discovery requests that were not yet due. ROA.280. Yanez had served the discovery prior to the parties' Rule 26(f) conference on January 19, 2021; therefore, DISH's responses were not due until February 19, 2021. ROA.498.

Despite Yanez having already filed a response to DISH's motion to compel arbitration on January 19, 2021 and briefing being closed, on January 28, 2021, Yanez moved to strike the arbitration agreement and the two declarations DISH submitted with its motion to compel arbitration. ROA.134, 404. That same day, Yanez also filed a separate motion requesting that he be permitted to conduct pre-

arbitration discovery despite briefing on the motion to compel arbitration having already concluded. ROA.414. On February 12, 2021, DISH filed a motion to stay discovery pending a ruling on the motion to compel arbitration. ROA.425.

On March 3, 2021, the Court ordered the parties to submit briefing on whether transfer to the Western District of Texas, El Paso Division was proper. ROA.552-554. Yanez had sued DISH in Cameron County, Texas, claiming in his Original Petition that venue was proper because he allegedly resided there "at the time of the accrual of the cause of action." ROA.20. The Court noted that Yanez failed to "explain why El Paso County – where the call center is located that he was working at when he was fired – was not an appropriate venue." ROA.553.

## IV.    The District Court Grants DISH's Motion to Compel Arbitration and Stays the Case

On April 23, 2021, the Honorable Magistrate Judge Ronald G. Morgan issued an order (1) granting DISH's motion to compel arbitration and staying the case pending arbitration, (2) transferring the case to the Western District of Texas, El Paso Division, and (3) denying Yanez's discovery motions and motion to strike. ROA.582-601.

On May 7, 2021, Yanez filed objections to the April 23, 2021 order wherein he generally reiterated his previous arguments without further explication. ROA.602. On May 21, 2021, DISH filed a response to Yanez's objections showing that the magistrate judge's findings as to the multiple issues raised by Yanez were

neither clearly erroneous nor contrary to law. ROA.613. On June 2, 2021, the Honorable Judge Fernando Rodriguez, Jr. overruled Yanez's objections to the April 23, 2021 order and granted DISH's motion to compel arbitration. ROA.630. The magistrate judge's April 23, 2021 order and the district court's June 2, 2021 order both granting DISH's motion to compel arbitration are collectively referred to herein as the "Order."

## V.     While the Arbitration is Pending, the District Court Dismisses the Action Without Prejudice

The case was subsequently transferred to the United States District Court for the Western District of Texas, El Paso Division, where it remained stayed, pending the outcome of arbitration.[3] ROA.631. On June 22, 2023, the district court issued a "Notice to the Parties" requiring that a status report be filed every 90 days. ROA.647.

On March 7, 2024, Senior United States District Judge Frank Montalvo issued a "Final Judgment and Dismissal," due to the parties' failure to timely file a status report on March 5, 2024. ROA.653. The dismissal was "without prejudice." ROA.654. Yanez filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) on April 4, 2024. ROA.655. DISH filed a response on April 18, 2024, observing that Yanez had failed to identify any manifest injustice or clear error of law in the district court's order. ROA.673.

---

[3] The parties are currently proceeding in arbitration with the American Arbitration Association before Arbitrator Joseph J. Gillespie. ROA.649.

On May 16, 2024, the Supreme Court issued *Smith v. Spizzirri*, 144 S. Ct. 1173 (2024), wherein it held that when a dispute is subject to arbitration under the FAA, a court may not dismiss a case when a party has requested a stay pending arbitration. *Id*. at 1175. On June 14, 2024, the district court denied Yanez's motion to alter or amend, finding that "*Smith* still allows a trial court to dismiss a stayed FAA case so long as there is a valid 'separate reason' to do so," citing to the parties' failure to file a status report. ROA.688, 696. This appeal followed. ROA.698.

## SUMMARY OF THE ARGUMENT

This Court should affirm the Order of the district court granting DISH's motion to compel arbitration. In opposing the enforcement of the parties' arbitration agreement, Yanez adopts a kitchen-sink strategy whereby he deploys a litany of factually and legally unsupported allegations that are evidence of nothing more than the fact that Yanez does not want to be in arbitration. The district court performed a comprehensive and trenchant analysis of the myriad arguments raised by Yanez, and its subsequent well-reasoned rejection of those arguments was fully consistent with binding precedent.

First, the district court determined the arbitration agreement was properly authenticated and admissible.[4] ROA.593. Second, the district court rejected Yanez's

---

[4] In his opening brief, Yanez omits several issues he raised in the district court regarding DISH's motion to compel arbitration. Specifically, on appeal Yanez does not raise his contention that "the agreement produced in court is an unauthenticated hearsay document," an argument that the

challenge to his signature on the arbitration agreement, finding the "attacks on whether he actually agreed to arbitrate are meritless." ROA.594. Third, the district court rejected Yanez's argument that DISH was required to sign the arbitration agreement – which has no signature block for DISH – finding that "the claim does not merit relief." ROA.595. Fourth, the district court dismissed Yanez's argument that the DISH and Echosphere were not proper parties to the arbitration agreement because he entered into the agreement with EchoStar Communications Corporation as "not well founded," noting that the "arbitration agreement made clear that it bound Yanez to EchoStar and its 'affiliates.'" ROA.596. Fourth, the district court rejected Yanez's argument that a provision permitting the party who prevails on a motion to compel arbitration to recover their attorneys' fees incurred in moving to compel was illegal. ROA.597. And fifth, the district court rejected Yanez's argument that the arbitration agreement was illusory, finding "this argument is not supported by the law." ROA.598.

---

district court found to be "meritless," while concluding that "the arbitration agreement has been properly authenticated and is admissible under the business records exception found at FED. R. EVID. 803(6).3." ROA.590, 593. Nor does Yanez raise his contention that a waiver of common law damages in the arbitration agreement is illegal, an argument that the district court found to be "unfounded," while concluding the waiver is "acceptable and valid," citing to *Inv. Partners, L.P. v. Glamour Shots Licensing, Inc.*, 298 F.3d 314, 317–18 (5th Cir. 2002). ROA.599. Similarly, while in his opening brief under "Rulings Presented for Review" Yanez lists the discovery motions (ROA.280, 404, 414) he filed that were denied by the district court's Order, Yanez does not raise any arguments related to the denied discovery motions on appeal and the discovery motions are not referenced under Yanez's "Issued Presented for Review." Brief xiii, 9-10.

In his opening brief, Yanez fails to identify any error in the district court's factual findings or legal reasoning. The district court's Order granting the motion to compel arbitration should be affirmed.

Yanez additionally appeals the dismissal of the case contending that due to a subsequent change in the law, the case should have continued to be stayed rather than dismissed due to a failure to timely file a status report. Brief 27. However, in denying Yanez's motion to alter or amend judgment, the district court thoroughly analyzed *Smith v. Spizzirri* and reasonably concluded that "*Smith* still allows a trial court to dismiss a stayed FAA case so long as there is a valid 'separate reason' to do so." ROA.696. The district court's dismissal of the case without prejudice should be upheld.

## ARGUMENT

### I.    Standard of Review for an Order Compelling Arbitration

A district court's grant of a motion to compel arbitration is reviewed *de novo*, employing the same standards as the district court. *See Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 708 (5th Cir. 2002). A district court's factual findings related to the arbitration agreement's enforceability are reviewed for clear error. *Soni v. Solera Holdings, L.L.C.*, No. 21-10428, 2022 WL 1402046, at *3 (5th Cir. May 4, 2022) (unpublished) (citing *Cal. Fina Grp., Inc. v. Herrin*, 379 F.3d 311, 315 (5th Cir. 2004)).

## II.     The Federal Arbitration Act Governs the Arbitration Agreement

In his opening brief, Yanez inserts the stand-alone statement that DISH "failed to establish the Arbitration Agreement involved interstate commerce," citing to 9 U.S.C. § 2. Brief 22. Yanez does not revisit this assertion.[5] To the extent this unsupported and unargued allegation were to be construed as Yanez contesting the application of the FAA in this matter, his assertion is baseless.

"It is black letter law that parties may expressly agree to arbitrate under the FAA." *Rodgers-Glass v. Conroe Hosp. Corp.*, No. H-14-3300, 2015 WL 4190598, at *8 n.4 (S.D. Tex. July 10, 2015) (unpublished) (citing *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) ("Parties may also expressly agree to arbitrate under the FAA."). When the parties' arbitration agreement expressly provides that it is governed by the FAA, "a party seeking to compel arbitration under the arbitration agreement is not required to establish that the agreement or transaction at issue involves or affects interstate commerce." *Iguana Joe's Crosby, Inc. v. Martinez*, No. 14-23-00636-CV, 2024 WL 4891088, at *4 (Tex. App.—Houston [14th Dist.] Nov.

---

[5] The Court may disregard an argument that is not adequately briefed. *See e.g., Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument…by failing to adequately brief the argument on appeal.") (citing *Norris v. Causey*, 869 F.3d 360, 373 n.10 (5th Cir. 2017) (noting a party forfeits a claim by failing to adequately brief the issue; *see also Wije v. Stuart*, 694 Fed. Appx. 234, 236 (5th Cir. 2017) (finding appellant "failed to preserve his argument on appeal" by "refer[ing] to various parts of the district court's order dismissing his claims, but [failing] to explain how the district court erred"); Fed. R. App. P. 28(a)(8)(A) (requiring an appellant's argument to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies").

26, 2024, no pet. h.); *see also Amazon.com Services, LLC v. De La Victoria,* No. 14-23-00493-CV, 2024 WL 3941376, at *6 (Tex. App.—Houston [14th Dist.] Aug. 27, 2024, no pet.) (same).

Here, the parties' Arbitration Agreement expressly provides that "this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*" ROA.119. Accordingly, DISH was not required to establish that the Arbitration Agreement involves or affects interstate commerce, as was explained in DISH's motion to compel arbitration. ROA.63.

## III.  The District Court Correctly Found the Arbitration Agreement is Binding and Enforceable on All Parties

When considering whether to enforce an arbitration agreement, courts in the Fifth Circuit typically engage in a two-step analysis: (1) whether a valid agreement to arbitrate exists and (2) whether the dispute falls within the scope of the arbitration agreement. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013). For purposes of determining the existence of a valid agreement to arbitrate, courts apply "ordinary state-law principles that govern the formation of contracts."[6] *First Options of*

---

[6] Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba,* 892 F.3d at 689 (citations omitted).

*Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The parties do not dispute that Texas law governs.

### A. DISH Established the Existence of a Valid Arbitration Agreement Between the Parties

As evidence of a valid arbitration agreement between the parties, DISH produced a copy of the arbitration agreement signed by Yanez, accompanied by the authenticating declaration of Katherine Leyba, a Senior Human Resources Manager at DISH. ROA.117-120. *See Rodgers-Glass*, 2015 WL 4190598 at *8 ("A party may prove the existence and execution of the arbitration agreement by attaching to its motion to compel an affidavit proving up the agreement and stating that the nonmovant entered into the agreement."); *see also In re DISH Network*, 563 S.W.3d 433, 439 (Tex. App.—El Paso 2018, orig. proceeding) (finding that with the authenticating affidavit of a human resources manager "DISH presented *prima facie* evidence that an arbitration agreement exists" ); *Dish Network L.L.C. v. Brenner*, No. 13-12-00564-CV, 2013 WL 3326640, at *4 (Tex. App.—Corpus Christi-Edinburg June 27, 2013, no pet.) (mem. op.) (finding copy of the arbitration agreement authenticated by the affidavit of DISH's human resources representative was sufficient to prove the existence of valid agreement to arbitrate).

Under the terms of the arbitration agreement executed by Yanez, both parties mutually promise to give up the right to a jury trial and submit employment-related disputes to arbitration. ROA.119. Under Texas law, a mutual agreement to arbitrate

disputes constitutes adequate consideration to support a binding agreement to arbitrate. *See, e.g., Nelson v. Watch House Intern., L.L.C.*, 815 F.3d 190, 193 (5th Cir. 2016) (finding that under Texas law, "a mutual agreement to arbitrate claims is sufficient consideration to support an arbitration agreement"); *In re 24R, Inc.*, 324 S.W.3d 564, 566 (Tex. 2010) (per curiam) ("Mutual agreement to arbitrate claims provides sufficient consideration to support an arbitration agreement."). Further, Yanez's continued employment after receiving notice that any claims would be subject to arbitration also establishes his acceptance of the arbitration agreement. *See Trujillo v. Volt Mgmt. Corp.*, No. EP-19-CV-00337-DCG, 2020 WL 1906097, at *4 (W.D. Tex. Apr. 17, 2020), *aff'd*, 846 Fed. Appx. 233 (5th Cir. 2021) (unpublished) ("[A] plaintiff will be bound by an arbitration agreement by continuing her employment after receiving notice of an arbitration policy."); *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 163 (Tex. 2006) ("An at-will employee who receives notice of an employer's arbitration policy and continues working with knowledge of the policy accepts the terms as a matter of law.").

All elements of contract formation are satisfied here. DISH established the arbitration agreement is valid and binding by showing that it offered the arbitration agreement to Yanez as a condition of his employment. ROA.117. Yanez accepted the offer by executing the arbitration agreement, as well as by his continued employment after receiving notice that he would be required to sign the arbitration

agreement, thereby consenting to the written terms of the arbitration agreement. ROA.120. The terms of the Arbitration Agreement reflect the parties' meeting of the minds and shared intent that the agreement be mutual and binding, and the Arbitration Agreement is, accordingly, supported by consideration. ROA.119. Based on the foregoing, the Arbitration Agreement is binding on all parties, and they are mutually obligated to arbitrate their disputes. The district court correctly concluded there was "*prima facie* evidence of an agreement to arbitrate." ROA.589.

### B. Yanez's Claims Against DISH and Echosphere Fall Within the Scope of the Arbitration Agreement

Yanez seemingly concedes in his opening brief that scope is not "at issue in this case." Brief 15. Yet he also contradictorily claims that DISH "failed to establish . . . that the dispute falls within the scope of that agreement," without further elaboration. Brief 11. Therefore, in an abundance of caution, DISH briefly addresses the issue of scope.

Under the FAA, any doubts as to whether a claim falls within the scope of the agreement must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Here, the parties' arbitration agreement states that any claims "arising out of and/or in any way related to [Yanez's]…employment and/or termination of employment…shall be resolved by arbitration." ROA.119. Yanez's workplace claims for discrimination and retaliation arise out of and are directly related to his termination of employment and,

therefore, fall within the scope of the arbitration agreement. ROA.24-25. *See Glassell Producing Co. v. Jared Res., Ltd.*, 422 S.W.3d 68, 78 (Tex. App.—Texarkana 2014, no pet.) ("Arbitration clauses in which the scope is defined as using 'related to' and similar wide-reaching phrases are interpreted broadly.").

There is no real dispute that Yanez's claims fall with the scope of the arbitration agreement. In opposing DISH's motion to compel arbitration, Yanez's only basis for denying his claims were within the scope of the arbitration agreement was the circular argument that his claims could not be within the scope because the arbitration agreement was not enforceable. ROA.150-51.

The district court correctly found "there is *prima facie* evidence of an agreement to arbitrate" and that the arbitration agreement "clearly covers the claim of employment discrimination." ROA.589. In a thorough and well-reasoned order, the district court rejected Yanez's shotgun approach to opposing the enforcement of the arbitration agreement, noting "none of the arguments are well-taken." ROA.590.

## IV. The District Court Correctly Found DISH and Echosphere May Seek to Enforce Enforce the Arbitration Agreement

Yanez contends that DISH and Echosphere are not parties to the arbitration agreement. Brief 21. The factual underpinnings for this contention are murky as Yanez summarily concludes DISH cannot enforce the arbitration agreement because "[t]he reorganization of EchoStar Communications Corporation led to a change in

Yanez's employer."[7] Brief 19. Tellingly, there is no citation to the record in support of Yanez's allegation that his employer changed at some point.

To the contrary, the credible evidence reflects that Yanez clearly understood that he had the same employer from 2001 until his termination, regardless of a corporate name change during that time. In Yanez's Original Petition, he alleges that "[o]n or about May 29, 2001, DISH Network (hereinafter "DISH") hired Plaintiff Jesus Yanez as a customer service representative at the El Paso, Texas location." ROA.21-22. In his sworn Charge of Discrimination filed with the Equal Employment Opportunity Commission in 2019, Yanez also identified his employer as "DISH Network" and stated, "I began working for Respondent in 2001." ROA.207. Yanez cannot credibly dispute that from 2001 to the time of his termination he always worked for DISH Network Corporation (f.k.a. EchoStar Communications Corporation) or one of its affiliates, as defined in the arbitration agreement.

Nevertheless, Yanez now argues that his employer "changed" based on a misapprehension – or deliberate obfuscation – of a corporate name change. Brief 19. As is well documented in the public record, EchoStar Communications Corporation changed its name to DISH Network Corporation in 2008. ROA. 79, 82, 94.

---

[7] While Yanez repeatedly characterizes the corporate name change as a "reorganization," that word that does not appear in any of the public filings regarding the corporate name change. Brief 1, 19, 22.

Therefore, because Yanez signed the arbitration agreement in 2001, the document bore the name "EchoStar" rather than "DISH." This in no way signifies a change in his employer that would prevent DISH from enforcing the arbitration agreement Yanez signed upon being hired. *See, e.g., In re Macy's Tex., Inc.,* 291 S.W.3d 418, 420 (Tex. 2009) ("As [the employee] agreed to arbitrate with her employer and purported to sue her employer, she cannot avoid arbitration by raising factual disputes about her employer's correct legal name.").

### A. EchoStar Communications Corporation changed its name to DISH Network Corporation in 2008

On December 31, 2007, EchoStar Communications Corporation filed a Definitive Information Statement with the United States Securities and Exchange Commission ("SEC") explaining that it was making a corporate name change:

> The Company is changing its name to "DISH Network Corporation" to reflect the Company's decision to focus on its direct broadcast satellite subscription television service in connection with an anticipated spin-off of certain portions of its business.

ROA.77-80. On January 16, 2008, a Certificate of Amendment of Articles of Incorporation of EchoStar Communications Corporation was filed with the Nevada Secretary of State stating that EchoStar Communications Corporation's articles of incorporation were amended to change the company's name to DISH Network Corporation. ROA.82-91. DISH Network Corporation retains the same I.R.S.

Employer Identification Number as when the company was known as EchoStar Communications Corporation. ROA.93-94, 114.

Yanez's vague reference to his employer having supposedly "changed" at some unspecified time seems to be premised on his mistakenly conflating EchoStar Communications Corporation (n.k.a DISH Network Corporation) with EchoStar Corporation due to the similarity in names. But EchoStar Corporation has never been identified as Yanez's employer by either party. When EchoStar Communications Corporation changed its name to DISH Network Corporation in 2008, it also spun-off "technology and certain infrastructure assets into a separate publicly-traded company, EchoStar Corporation, formerly known as EchoStar Holding Corporation, which was incorporated in Nevada on October 12, 2007." ROA.116, 156. EchoStar Corporation – which was *not* formerly known as EchoStar Communications Corporation – was incorporated well after Yanez was hired in 2001. *Id*. There is no evidence that Yanez was ever employed by EchoStar Corporation. To the contrary, as noted by the district court, DISH submitted the declaration of Kimberly Culig, Senior Manager of SEC Reporting at DISH, explaining that the customer service call centers – where Yanez worked – were not part of the spin-off and remained under the control of DISH Network Corporation (f.k.a EchoStar Communications Corporation). ROA.114, 598. The unauthenticated 2018 Annual Report from EchoStar Corporation that Yanez inexplicably relies upon signifies nothing more

than the fact that DISH Network Corporation and EchoStar Corporation were separately traded entities in 2018.[8] ROA.156.

In a recent case, *DISH Network L.L.C. v. Alexander*, the Texas Thirteenth District Court of Appeals addressed virtually the same arguments that Yanez raises in this case regarding DISH's corporate name change.[9] No. 13-20-00240-CV, 2021 WL 3085763, at *6 (Tex. App.—Corpus Christi–Edinburg July 22, 2021, pet. denied). After a comprehensive review of the evidence, the court concluded, "because a company's name change does not prevent it from invoking its own arbitration agreements, DISH is a proper party and may seek to enforce the arbitration agreement that Alexander entered in 2004 with EchoStar before the name change." *Id*. at *6.

Texas courts agree that a corporate name change does not affect the contractual obligations of the parties existing prior to the name change. *See, e.g., In re H&R Block Fin. Advisors, Inc.*, 235 S.W.3d 177, 178 (Tex. 2007) ("Under ordinary legal principles, a contracting party that has merely changed its name is still a contracting party. Accordingly, the company's change of name does not prevent it

---

[8] On October 3, 2023, it was announced that EchoStar Corporation and DISH Network Corporation had entered into an Amended and Restated Agreement and Plan of Merger, with DISH Network Corporation surviving the merger as a wholly owned subsidiary of EchoStar Corporation. *See https://www.sec.gov/Archives/edgar/data/1415404/000110465923106157/tm2327406-1_s4.htm.*

[9] Yanez's counsel also serves as counsel for Deborah Alexander, the plaintiff in *DISH Network L.L.C. v. Alexander*, Cause No. 13-20-00240-CV.

from invoking its own arbitration agreements."); *In re ReadyOne Indus., Inc.*, 294 S.W.3d 764, 771 (Tex. App.—El Paso 2009, no pet.) ("[A] business entity with a new name may invoke an arbitration agreement that was signed by the same company prior to the name change."); *see also Playboy Enterpises, Inc. v. Sanchez-Campuzano*, No. M-01-226, 2010 WL 11458755, at *8 (S.D. Tex. Nov. 23, 2010) (unpublished) ("[a] corporate name change has no effect on the identity of the company or its rights and liabilities").

### B. Under the terms of the arbitration agreement, DISH and Echosphere are affiliates of DISH Network Corporation (f.k.a. EchoStar Communications Corporation)

Yanez further argues that DISH and Echosphere cannot enforce the arbitration agreement because the agreement supposedly "does not mention DISH Network, L.L.C. or Ec[h]osphere, L.L.C. as parties to it." Brief 21. In making this argument, Yanez egregiously fails to acknowledge that the arbitration agreement defines "EchoStar" to include its affiliates. ROA.119.

The arbitration agreement that Yanez signed is enforceable by DISH and Echosphere because both fall within the definition of "EchoStar" in the arbitration agreement, which states that it:

> …is between EchoStar Communications Corporation and all of its affiliates (the term "affiliates" means companies controlling, controlled by or under common control with, EchoStar Communications Corporation) (EchoStar Communications Corporation and its affiliates are individually and collectively referred to herein as "EchoStar") and Jesus Yanez ("Employee").

ROA.119. In its Form 10-K filed with the SEC in 2009 – after the corporate name change – DISH Network Corporation identifies both DISH and Echosphere in its "List of Subsidiaries" over which it has 100% ownership. ROA.96. Consequently, both DISH and Echosphere are wholly-owned subsidiaries that are 100% "controlled by or under common control with" DISH Network Corporation. ROA.114. DISH and Echosphere were also considered wholly-owned subsidiaries of DISH Network Corporation prior to the corporate name change when the entity was known as EchoStar Communications Corporation.[10] ROA.108, 115.

Yanez has tried to create confusion where none exists by claiming that DISH and Echosphere are controlled by DISH DBS Corporation rather than DISH Network Corporation. ROA.606. This misleading allegation has been thoroughly rebutted. Eric J. Pagels, a Director, Senior Corporate Counsel, and Assistant Secretary for DISH Network Corporation and its affiliates, submitted a declaration explaining that while DISH DBS Corporation is the sole member of DISH and Echosphere, DISH DBS Corporation itself "is an indirect, wholly owned subsidiary of DISH Network Corporation." ROA.50. An excerpt from DISH DBS Corporation's 2019 Form 10-K confirms the information in Pagel's declaration, namely that DISH DBS Corporation is the sole member of DISH and Echosphere.

---

[10] Prior to 2008, DISH Network L.L.C. was formerly known as EchoStar Satellite L.L.C. On February 29, 2008, Articles of Amendment were filed with the Colorado Secretary of State stating that EchoStar Satellite L.L.C. was changing its name to DISH Network L.L.C. ROA.99, 114-15.

ROA.520-21. That same Form 10-K also sets out that DISH DBS Corporation's common stock is held by DISH Orbital Corporation and that DISH Orbital Corporation, in turn, is a wholly-owned subsidiary of DISH Network Corporation:

> DISH DBS Corporation . . . is a holding company and an indirect, wholly-owned subsidiary of DISH Network Corporation ("DISH Network"). DISH DBS was formed under Colorado law in January 1996 and its common stock is held by DISH Orbital Corporation ("DOC"), a direct subsidiary of DISH Network.

ROA.521. DISH Orbital Corporation, DISH DBS Corporation, DISH Network L.L.C., and Echosphere L.L.C. are all identified as being 100% owned by DISH Network Corporation (f.k.a. EchoStar Communications Corporation) as a matter of public record as of December 31, 2008, *after* the corporate name change that Yanez alleges led to a "change" in his employer, just as they were prior to the corporate name change. ROA.96, 108.

Thus, Yanez's unsupported speculation that DISH and Echosphere are not controlled and wholly owned by DISH Network Corporation is demonstrably false. DISH and Echosphere plainly established that they are entitled to enforce the arbitration agreement against Yanez as affiliates of DISH Network Corporation (f.k.a. EchoStar Communications Corporation).[11] The district court's conclusion that

---

[11] Because DISH and Echosphere have at all times during Yanez's employment been controlled by DISH Network Corporation (f.k.a. EchoStar Communications Corporation), they are considered affiliates under the explicit terms of the parties' arbitration agreement and can enforce the arbitration agreement without being signatories. ROA.114-15. *See Carrigan v. Live Oak Nursing Ctr., LLC*, 2:15-CV-319, 2015 WL 6692199, at *4 (S.D. Tex. Nov. 3, 2015) (unpublished)

as to any claims against DISH and Echosphere, "the arbitration agreement remains in full force" is well-supported by the public record and sworn testimony. ROA.596.

## V.    The District Court Correctly Found DISH's Signature Is Not Required to Form a Valid and Enforceable Arbitration Agreement

Yanez contends the arbitration agreement is not valid because it is not physically signed by DISH, Echosphere, or EchoStar Communications Corporation (n.k.a. DISH Network Corporation). But it has long been settled that a signature is not required to provide evidence of a party's acceptance of an arbitration agreement under the FAA.[12] *See Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987) (noting that under the FAA it "is established that a party may be bound by an agreement to arbitrate even in the absence of his signature"); *Soni*, 2022 WL 1402046, at *4 ("The FAA does not expressly impose a signature requirement."); *see also In re Macy's Tex., Inc.*, 291 S.W.3d at 419-20 ("The FAA contains no

---

("State and federal courts agree that non-signatories to an arbitration agreement may be bound to its terms via incorporation by reference.").

[12] The overwhelming weight of authority outside Texas and the Fifth Circuit also supports the rule that no signature is required to meet the FAA's "written" requirement for an arbitration agreement. *See, e.g., Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) ("We readily conclude that no signature is needed to satisfy the FAA's written agreement requirement."); *Tinder v. Pinkerton Sec.*, 305 F.3d 728 (7th Cir. 2002) (enforcing arbitration agreement unilaterally promulgated by employer despite no signature by the employee); *Genesco, Inc. v. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) ("[W]hile the [FAA] requires a writing, it does not require that the writing be signed by the parties"); *Medical Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973) ("Decisions under the Federal Arbitration Act…have held it not necessary that there be a simple integrated writing or that a party sign the writing containing the arbitration clause.  All that is required is that the arbitration provision be in writing.").

requirements for the form or specificity of arbitration agreements except that they be in writing; it does not even require that they be signed.") (citing 9 U.S.C. § 2); *In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 606 (Tex. 2005) ("[N]either the FAA nor Texas law requires that arbitration clauses be signed, so long as they are written and agreed to by the parties.").

The question of whether a contract is binding absent both parties' signatures "is a question of the parties' intent." *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 454 (5th Cir. 2013). Under Texas law, "to make a signature a condition precedent to enforcement of a contract – including an arbitration agreement – the agreement must clearly and explicitly require a signature before it becomes binding." *Flores v. BJ's Rest. Operations Co.*, No. 23-50038, 2023 WL 6533452, at *1 (5th Cir. Oct. 6, 2023) (unpublished) (quoting *Firstlight Fed. Credit Union v. Loya*, 478 S.W.3d 157, 170 (Tex. App.—El Paso 2015, no pet.)).

Here, the district court correctly found the parties' arbitration agreement "contains no language that requires both parties to sign the agreement, in order for it to be valid." ROA.594. Yet Yanez contends that language wherein DISH "agrees to" or "acknowledges" certain terms should be construed as evidence the parties intended to require both parties' signature as a condition precedent to the

enforceability of the arbitration agreement.[13] (Br. at 17.) Significantly, Yanez cites no applicable case law for this proposition.

While arguing that DISH was required to sign the arbitration agreement, Yanez wholly elides the indisputable fact that there is no signature block for DISH in the arbitration agreement. Because there is no signature block for DISH, the case law Yanez relies upon for support of his proposition is readily distinguishable. In *Huckaba v. Ref-Chem, L.P.,* the express language of the arbitration agreement required both parties' signature and there was a signature block for the employer.[14] 892 F.3d 686, 689 (5th Cir. 2018). And in *Hi Tech Luxury Imports, LLC v. Morgan*, the parties' arbitration agreement also had a signature block for the employer and unambiguous language above the signature lines whereby the parties attested that they had read, understood, and agreed to be bound by the terms. No. 03-19-00021-CV, 2019 WL 1908171, at *2 (Tex. App.—Austin Apr. 30, 2019, no pet.).

---

[13] Specifically, Yanez contends the following contractual language is supposedly evidence of an explicit intent that both parties must sign the arbitration agreement for it to be enforceable: (1) "the Employee and EchoStar agree that any claim…shall be resolved by arbitration, (2) "EchoStar agrees to pay all the arbitrator's and arbitration fees," and (3) "The Parties acknowledge that this Agreement shall not alter the at-will nature of their employment relationship." Brief 17.

[14] In *Huckaba*, the court found that a signature was required where the arbitration agreement included (1) a statement that "[b]y signing this agreement the parties are giving up any right they may have to sue each other," (2) a prohibition of modifications unless they are "in writing and signed by all parties," and (3) a signature block for the employer. *Huckaba*, 892 F.3d at 689-90. None of those elements are present in this case.

In a similar case to the one at hand, the Fifth Circuit concluded that Texas law did not require the employer's signature to enforce an arbitration agreement, noting: "Perhaps most importantly, there is no place for [the employer] to sign the agreement. It contains no signature block at the end of the agreement for the company." *Flores*, 2023 WL 6533452, at *1. The *Flores* court cogently observed that "[the employee] has pointed to no Texas case in which a court has invalidated an agreement for lack of signature when there was no empty signature block." *Id.* The *Flores* court went on to note that if the arbitration agreement were found to be ambiguous as to a signature requirement, "Texas law would require us to consider the parties' conduct," citing to *DISH Network L.L.C. v. Alexander*, 2021 WL 3085763, at *7 (Tex. App.—Corpus Christi–Edinburg July 22, 2021, pet. denied) ("In the absence of express language indicating a signature requirement, courts determine whether there is an intent to be bound by the arbitration agreement by considering various actions taken by the employer."); *see also Soni*, 2022 WL 1402046, at *3 (noting that when determining whether the parties mutually assented to the arbitration agreement, "Texas courts consider 'the employer's act of drafting the arbitration agreement, its actions in maintaining the agreement as a business record, and its actions in moving to enforce the agreement when the employee filed suit against it.'") (quoting *SK Plymouth LLC v. Simmons*, 605 S.W.3d 706, 718 (Tex. App.—Houst. [1st Dist.] 2020) (citation omitted)).

In *DISH Network*, the court analyzed the same arbitration agreement that is at issue in this matter and addressed essentially the same argument Yanez now raises regarding the lack of DISH's signature. *See DISH Network,* 2021 WL 3085763, at *6-7 ("Alexander argues that the arbitration agreement is invalid because it does not contain EchoStar's signature. Again, this claim is meritless…"). The court considered the "various actions" taken by DISH and found that "DISH intended to be bound by the arbitration agreement," noting that DISH prepared the arbitration agreement, presented it to employees for signature, maintained the agreement in the employee's file, and sought to enforce the arbitration agreement. *Id*. at *7. The court concluded, "the arbitration agreement does not require DISH's signature as a condition precedent to its enforceability." *Id*. The court further observed that "we previously considered an arbitration agreement identical to that between DISH and Alexander and concluded that 'the undisputed evidence establishes that DISH Network intended to be bound by the Arbitration Agreement.'" *Id*. (quoting *Dish Network L.L.C. v. Brenner*, 2013 WL 3326640, at *4–5).

In this case, DISH has also established its intent to be bound by the arbitration agreement by its actions: (1) EchoStar Communications Corporation. EchoStar drafted the arbitration agreement, including "all of its affiliates" within the definition of "EchoStar." ROA.119-20. (2) The arbitration agreement was printed on the company's letterhead and therefore only contained a signature block for the

employee. ROA.119. (3) All newly hired employees were required to sign the arbitration agreement as a condition of their employment. ROA.117. (4) The arbitration agreement was maintained in employees' personnel file as a business record. ROA.117-18. (5) There is no express language requiring that the employer sign the arbitration agreement to make it enforceable. (6) And finally, DISH moved to enforce the arbitration agreement. ROA.58. This evidence establishes that DISH's signature was not required to form a valid and enforceable arbitration agreement because its actions conclusively reflect its intent to be bound. *See, e.g., Flores*, 2023 WL 6533452, at *2 (finding the employer demonstrated an intent to be bound despite not signing the arbitration agreement by preparing the arbitration agreement on its letterhead, presenting the agreement to employees for signature, keeping a record in its personnel files, and seeking to enforce the agreement).

Yanez presented no conflicting evidence to suggest that DISH did not intend to be bound by the arbitration agreement in the absence of a signature. The district court correctly found the arbitration agreement "contains no language that requires both parties to sign the agreement, in order for it be valid." ROA.594.

## VI.    Yanez Failed to Properly Put the Making of the Arbitration Agreement at Issue[15]

Yanez somewhat half-heartedly challenges whether it is his signature on the arbitration agreement. But to put the formation of an arbitration agreement at issue for its authenticity, the party seeking to challenge the arbitration agreement is "required to unequivocally deny that he agreed to arbitrate and produce some evidence supporting his position." *Chester v. DirecTV, L.L.C.*, 607 F. App'x 362, 363–64 (5th Cir. 2015) (per curiam) (unpublished) (internal citations and quotations omitted). "A party merely stating that he did not sign an arbitration agreement does not put the arbitration agreement in issue." *Acosta v. Odle Mgmt. Group, LLC*, No. EP-19-CV-265-PRM, 2020 WL 4060782, at *4 (W.D. Tex. July 20, 2020) (unpublished); *see also Rosales v. Coca-Cola Sw. Beverages LLC*, No. EP-18-CV-361-PRM, 2019 WL 1493359, at *5 (W.D. Tex. Apr. 3, 2019) (unpublished) ("[W]hen a plaintiff testifies that he does not recall signing an agreement but fails to unequivocally deny having signed one, courts will typically compel arbitration if the defendant produces physical evidence of an arbitration agreement if the defendant produced physical evidence of an arbitration agreement.") (citing *Thick v.*

---

[15] In his "Statement of the Case" and "Summary of the Argument," Yanez contends the signature on his arbitration agreement does not match his signature on a declaration he submitted in this case, and that he has no recollection of signing an arbitration agreement. Brief 2-3, 11. While DISH does not consider Yanez to have sufficiently presented this issue for purposes of his appeal, in an abundance of caution, DISH is addressing these contentions.

*Dolgencorp of Texas, Inc.*, No. 4:16-CV-00733, 2017 WL 108297, at *2 (E.D. Tex. Jan. 11, 2017) (unpublished) (compelling arbitration when the plaintiff merely claimed not to recall agreeing to arbitration)).

Yanez's conclusory allegation that the signature on his arbitration agreement signed in May 2001 and his declaration signed on January 2021 do not "match" is insufficient to put the authenticity of the arbitration agreement in issue. *See Walker v. Tao Operating, L.L.C.*, No. 1:13-CV-6319, 2014 WL 11904577, at *6-7 (E.D. Tex. Aug. 14, 2014) (unpublished) ("A party should not be able to avoid the enforcement of an arbitration agreement that is otherwise valid by obliquely stating without any supporting proof that it is not a genuine signature."). Other than a self-serving declaration Yanz signed on the same day the response brief was filed wherein he argued the two signatures do not "match," Yanez failed to put forth any evidence contesting that he executed the arbitration agreement.

Yanez fails to either unequivocally deny that he signed the arbitration agreement or produce any credible evidence supporting his position. In Yanez's declaration – the only evidence offered pertaining to his signature – he carefully states: "At no time during my employment with *DISH Network, L.L.C.* did I sign an agreement to arbitrate any claims with *DISH Network, L.L.C.*" ROA.205 (emphasis

added). But as Yanez is well aware,[16] the name "DISH Network L.L.C." is not on the parties' arbitration agreement, rendering Yanez's contention that he did not sign an arbitration agreement with "DISH Network L.L.C." meaningless.[17] Yanez, however, does not expressly deny signing the Arbitration Agreement in May 2001 with EchoStar Communications Corporation, nor does he state under oath that the signature on the arbitration agreement is a forgery. ROA.205-06. The statement in his declaration is therefore not sufficient to challenge the authenticity of his signature.[18] *See, e.g., Chester*, 607 F. App'x at 364; *see also Am. Heritage*, 294 F.3d at 710.

Yanez also claims to "have no recollection of signing [the arbitration agreement]." ROA.205. But merely claiming to have no recollection of signing an arbitration agreement is likewise insufficient to challenge a signature's authenticity. *See Orozco v. JP Morgan Chase Bank, N.A.*, No. H-20-1961, 2020 WL 6044332, at *3 (S.D. Tex. Oct. 13, 2020) (unpublished) (rejecting argument that an arbitration agreement was not valid because the plaintiffs claimed to have "forgotten about the agreement"). As the district court aptly noted in rejecting Yanez's argument, "A

---

[16] In his opening brief, Yanez acknowledges that "the Arbitration Agreement produced does not mention DISH Network, L.L.C." Brief 21.

[17] As set forth in Section IV.B, DISH and Echosphere can enforce the parties' arbitration because they are affiliates as defined in the arbitration agreement.

[18] Notably, the signature on Yanez's declaration appears to the untrained eye to be very similar to his signature on the arbitration agreement. ROA.206.

failure to recall is not the same thing as an unequivocal denial," citing to *Sunburst Media Mgmt., Inc. v. Devine*, No. 3:08-CV-1170G, 2010 WL 1962499, at *4 (N.D. Tex. May 17, 2010) (unpublished) ("Disclaiming recall of an event, or professing disbelief of it, is not equivalent to affirmatively denying that the event took place"). ROA.593. Because Yanez has not properly challenged the authenticity of his signature on the Arbitration Agreement, the arguments regarding his signature must be rejected. The district court correctly concluded, "Yanez's attacks on whether he actually agreed to arbitrate are meritless." ROA.594.

## VII.   The District Court Correctly Found the Arbitration Agreement is Not Illusory

Under Texas law, an arbitration agreement "is illusory where one party has the unrestrained unilateral authority to terminate its obligation to arbitrate." *Nelson* 815 F.3d at 193 (internal citations and quotations omitted). The Texas Supreme Court has held that an "arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re 24R, Inc.*, 324 S.W.3d at 567. In that case, an employee manual provided that the employer had the "right to revoke, change or supplement guidelines at any time without notice." *Id.* But, as is the case in the matter at hand, the parties' arbitration agreement was in an entirely separate document that does not incorporate the employee manual by reference. *Id.* at 568. The Texas Supreme Court rejected the argument that the arbitration agreement was illusory, explaining that "[a]lthough

language in the employee manual recognizes the existence of the arbitration agreement, this does not diminish the validity of the arbitration agreement as a stand-alone contract." *Id.*

Here, a plain reading of the arbitration agreement shows that it does not grant DISH a unilateral right to modify, revoke, or rescind the arbitration agreement. Nor does the arbitration agreement incorporate any other documents by reference. As noted by the district court, "The arbitration agreement at issue here does not cite, either directly or by implication, any outside documents such as the employee handbook." ROA.598. When an arbitration agreement "does not mention or incorporate by reference" any other documents, it is considered a "stand-alone" arbitration agreement. *See In re 24R, Inc.*, 324 S.W.3d at 567.

Yanez has not – and cannot – identify any language within the arbitration agreement that would give DISH the unilateral right to change the terms of the arbitration agreement. Instead, Yanez resorts to relying on an undated copy of DISH's Non-Exempt [Hourly] Employee Guidelines ("Guidelines")[19] which states, "[t]hese guidelines can be modified at any time" and an unsigned acknowledgement form for the Guidelines which similarly states, "DISH Network retains the right to change these guidelines, policies and benefits." ROA.226, 252. Yanez also looks to

---

[19] Yanez makes no effort to argue that these undated and unauthenticated Guidelines for hourly employees would be applicable to him in his position as a Senior Operations Manager.

DISH's 2015 Employee Handbook ("Handbook") which explains that DISH "may revise or rescind all or any part of *these policies* at any time." ROA.171 (emphasis added). Both the Guidelines and the Handbook expressly disclaim that they create a contract or confer any contractual rights. ROA.171, 252.

Fatal to Yanez's argument is the undisputed fact that there is no mention whatsoever of arbitration in either the Guidelines or the Handbook. Because the arbitration agreement is not incorporated by reference in either document, there is no basis for Yanez to argue that the stand-alone arbitration agreement is subject to modification simply because the Handbook and Guidelines each provide for modification of the guidelines or policies enumerated within those documents. *See McCann v. Am. Homes 4 Rent, L.P.*, No. 4:19-CV-1879, 2020 WL 1429494, at *2 (S.D. Tex. Mar. 19, 2020) (unpublished) (rejecting the argument that a stand-alone arbitration agreement was illusory finding the agreement was not part of the employee handbook that permitted changes to policies).

While not entirely clear, Yanez appears to argue that the arbitration agreement somehow falls under the penumbra of the Handbook or Guidelines by attempting to characterize the arbitration agreement itself as a general "policy" that is subject to change. Yanez's only support for this contention is a lawyer-drafted sentence from DISH's motion to compel arbitration that refers to "Yanez's continued employment after receiving notice of DISH's mandatory arbitration policy," citing to a paragraph

in the declaration of Senior Human Resources Manager Kate Leyba explaining that employees are required to sign an arbitration agreement "as a condition of their employment." ROA.65, 117. As used in DISH's motion to compel arbitration, the phrase "mandatory arbitration policy" refers to DISH requiring employees to sign an arbitration agreement, not describing the arbitration agreement itself as a policy. ROA.65. Regardless, assuming *arguendo* that the stand-alone arbitration agreement was to be construed as a "policy," the Handbook and Guidelines only refer to modifying the policies that are referenced within those documents. Neither the Handbook nor the Guidelines make any reference to an arbitration agreement or an arbitration "policy."

Yanez next argues that the arbitration agreement is illusory because it does not contain language that expressly prevents DISH from modifying or rescinding the agreement. But there is no requirement that an arbitration agreement have a "savings clause" when it does not reserve the right to amend or terminate the agreement. *See In re 24R, Inc.*, 324 S.W.3d at 567-68 (finding the stand-alone arbitration agreement that did not incorporate the employee policy manual did "not require a *Halliburton*-type savings clause").

Yanez then claims the arbitration agreement is illusory based on a contorted reading of the 2015 Employee Handbook that post-dates his signing the Arbitration Agreement by more than 10 years. Under the heading "Statement of At-Will

Employment," the Handbook notes that only the CEO "can modify at-will status or provide any special arrangement concerning terms or conditions of employment." ROA.171. From this, Yanez appears to extrapolate that DISH's CEO must sign an arbitration agreement with each newly hired employee – in a nationwide company with thousands of employees – in order for the agreement to be enforceable. Brief 24-25. But this provision is clearly related to changing an employee's status as an at-will employee and makes no reference to arbitration agreements whatsoever. ROA.171. Moreover, having an employee sign an arbitration agreement can hardly be considered a "special arrangement" as all DISH employees are required to sign one. ROA.117. This argument strains credulity, to say the least.

Yanez has failed to identify any provision granting DISH the right to amend or rescind the arbitration agreement that he executed. Because DISH has no right to terminate the arbitration agreement, the arbitration agreement is not illusory and is enforceable under Texas law. *See Lizalde v. Vista Quality Markets*, 746 F.3d 222, 227 (5th Cir. 2014). The District Court properly found Yanez's argument that the arbitration agreement is illusory to be "meritless" and "unfounded." ROA.597-98.

## VIII. The District Court Correctly Found the Provision Permitting Either Party to Recover Attorneys' Fees Incurred in Successfully Compelling Arbitration Is "Valid and Enforceable"

Yanez contends that a provision in the arbitration agreement permitting either party to seek their attorneys' fees incurred in connection with having compelled a

claim filed in court to arbitration is "illegal" because it supposedly "contradicts the statutory schemes" for attorneys' fees under the Texas Commission on Human Rights Act, Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act. Brief 25. Yanez cites no relevant legal authority for this proposition.

The provision at issue states as follows:

> In the event either party hereto files a judicial or administrative action asserting claims subject to this Agreement, and the other party successfully stays such action and/or compels arbitration of the claims made in such an action, the party filing the administrative or judicial action shall pay the other party's     reasonable attorneys' fees and costs incurred in obtaining a stay and/or compelling arbitration.

ROA.119. The district court correctly found the above provision "requiring a party to pay the opposing party's fees related to compelling arbitration is not mutually exclusive with the statutory right to attorney's fees." ROA.597. The provision in no way precludes Yanez from recovering his attorney's fees should he prevail on his claims alleged under the Texas Labor Code, Title VII, and the ADEA. ROA.597. To the contrary, the arbitration agreement expressly provides that "[t]he prevailing party in any arbitration pursuant to this agreement to arbitrate shall be entitled to its, his, or her reasonable attorneys' fees and costs and arbitration expenses."[20] ROA.119. There is no legal or factual basis for Yanez's claim to the contrary.

---

[20] However, should DISH successfully defend itself against a claim of employment discrimination, the employee is not required to reimburse DISH. ROA.119.

Similar provisions in arbitration agreements that provide for the recovery of attorneys' fees and costs incurred in moving to compel arbitration have been upheld. In *Griffin v. Senior Living Properties, LLC*, the court concluded a provision that "permits recovery of fees associated with compelling arbitration" was not unconscionable and did not render the arbitration agreement unenforceable. No. 6:17-190, 2017 WL 3721989, at *5 (E.D. Tex. Aug. 29, 2017) (unpublished). Likewise, in *Escalera v. JD Byrider Dfw-Texas, Inc.*, the court found that a fee provision requiring the party refusing to arbitrate to bear all costs and fees of the party who successfully compelled arbitration was not unconscionable because it applied equally to both parties and "Texas courts have allowed an award of attorneys' fees where one party had breached an arbitration agreement by litigating a claim." No. 14-817, 2014 WL 12588317, at *2 (N.D. Tex. June 16, 2014) (unpublished) (citing *Rasmusson v. LBC PetroUnited, Inc.*, 124 S.W.3d 283, 283 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)); *see also Shuler v. Meritage Homes of Texas, L.L.C.*, No. A-09-CA-401 LY, 2009 WL 10669447, at *6 (W.D. Tex. Sept. 3, 2009) (unpublished) (finding a provision awarding fees and costs for proceedings related to enforcement of the arbitration had "no bearing on the propriety or alleged unconscionability of compelling arbitration").

The provision awarding attorneys' fees incurred in compelling arbitration is separate and distinct from the parties' right to recover any statutory award of

attorneys' fees and is therefore legal and enforceable. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 299 (5th Cir. 2004) (finding arbitration agreement's fee provisions did not violate statutory right to recover attorneys' fees). The District Court properly found "[t]his claim must fail, as well." ROA.596.

## IX. The District Court's Use of Its Inherent Powers to Dismiss the Case is Consistent with Well-Established Law

On March 7, 2024, the district court *sua sponte* issued a "Final Judgment and Dismissal," due to a missed deadline for filing a status report on March 5, 2024. ROA.653. The dismissal was "without prejudice." ROA.654. In response, Yanez filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) arguing that "Plaintiffs' counsel inadvertently failed to file a Status Report" and that the failure "was not justification for the drastic remedy of dismissal." ROA.655, 657. In denying Yanz's 59(e) motion, the district court concluded that "[r]egardless of the reasons, excuses, or negligence of [Yanez's] counsel," it was "not manifest error" to dismiss the case. ROA.693.

### A. Standard of Review for a Rule 59(e) Motion

"When a district court is presented with new evidence in a Rule 59(e) motion to alter or amend, and the court denies the motion, the standard of review depends on whether the district court considered the new evidence in reaching its decision." *Singleton v. Louisiana*, No. 24-30304, 2024 WL 4891185, at *2 (5th Cir. Nov. 26, 2024) (unpublished) (citations omitted). Should a district court consider any

materials attached to the Rule 59(e) motion that were not previously provided to the district court, "the appropriate appellate standard of review is *de novo*," rather than the abuse of discretion standard. *Templet v. HydroChem Inc.*, 367 F.3d 473, 477 (5th Cir. 2004).

In the district court's order denying Yanez's motion to alter or amend judgment, the district court acknowledges a declaration from Yanez's counsel and other materials submitted with Yanez's Rule 59(e) motion. ROA.693. Accordingly, to the extent the district court is found to have "considered the new evidence," the issue is subject to *de novo* review. *See Templet*, 367 F.3d at 477.

## B. Yanez Failed to Establish Any Manifest Errors in the District Court's Order Dismissing the Case

Rule 59(e) "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Id*. at 479. Yanez contends the district court abused its discretion in relying on a court's "inherent power to manage its own affairs" to *sua sponte* dismiss the case. Brief 28. But as noted by both Yanez and the district court, "[a] district court has the inherent power to manage its own affairs to achieve the orderly and expeditious disposition of cases." *Lewis v. Rawson*, 564 F.3d 569, 575 (2d Cir. 2009) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). ROA.657, 691.

On appeal, Yanez asserts for the first time[21] that the district court's dismissal – which was "without prejudice" – should be construed as "having effectively dismissed the case with prejudice," because he is supposedly now "barred from refiling" his case due to the statute of limitations for filing suit under Title VII or the Texas Labor Code.[22] Brief 29. For this proposition Yanez cites *Long v. Simmons*, 77 F.3d 878, 880 (5th Cir. 1996), which considered a district court's *sua sponte* dismissal under Fed. R. Civ. P. 41(b). Brief 29. But in this case, the district court dismissed the case under its inherent authority, not pursuant to Rule 41(b). ROA.654. The district court specifically noted that Rule 41(b) "does not restrict a court's inherent authority to unilaterally dismiss a case," citing *Link*, U.S. 626 at 629–31. ROA.654. Therefore, the cases cited by Yanez are inapplicable.

Moreover, at the time the district court dismissed the case, it was well-established that "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992), *abrogated by Smith v. Spizzirri*, 144 S. Ct. 1173, 1174 (2024). Yanez failed to

---

[21] "A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal…" *Rollins*, 8 F.4th at 397.

[22] While Yanez implies that he is "barred from refiling," his claims currently remain pending in arbitration with the American Arbitration Association. ROA.649.

establish that it was manifest error for the district court to dismiss a case wherein all the claims had been compelled to arbitration under the prevailing law at the time. *Id.*

### C. Yanez Failed to Show the District Court Did Not Follow Controlling Case Law

"Rule 59(e) allows a party to alter or amend a judgment when there has been an intervening change in the controlling law." *Rollins*, 8 F.4th at 396 (citing *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 567–68 (5th Cir. 2003)). After the parties' briefing on Yanez's motion to alter or amend judgment was closed, the Supreme Court issued *Smith v. Spizzirri*, 144 S. Ct. 1173, 1178 (2024). In *Smith*, the Supreme Court addressed "whether § 3 [of the FAA] permits a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration," and held that "[i]t does not." *Id.* at 1175. As recently noted by this Court, the Supreme Court "clarified that its holding did not preclude courts 'from dismissing the suit if there is a separate reason to dismiss,' if, for example, 'the court lacks jurisdiction.'" *Hines v. Stamos*, 111 F.4th 551, 565 n.59 (5th Cir. 2024) (quoting *Smith*, 144 S. Ct. at 1176 n.2).

The district court carefully considered *Smith* in its denial of Yanez's Rule 59(e) motion, noting that a distinguishing factor in the case at hand was that the order granting the motion to compel arbitration had "*already stayed*" the case pending the outcome of arbitration. ROA.694 (emphasis in original). In concluding that *Smith*

"did not change the controlling law as to the Court's actions here," the district court focused primarily on two passages from the *Smith* opinion.

First, under *Smith*, while a court no longer has discretion to dismiss a lawsuit on the basis that all claims are subject to arbitration, the Supreme Court clarified, "[t]hat is not to say that the court is barred from dismissing the suit if there is a separate reason to dismiss, unrelated to the fact that an issue in the case is subject to arbitration." *Smith*, 144 S. Ct. at 1176 n.2. Here, the district court's dismissal of the case was based on a failure to timely submit a status report. ROA.653-54. It is reasonable to conclude that a failure to adhere to an internal court practice would be considered a "separate reason," both procedurally and substantively, that is unrelated to the pending arbitration.

Second, the *Smith* Court carved out that "[d]istrict courts can, of course, adopt practices to minimize any administrative burden caused by the stays that § 3 requires." *Id*. at 1178. Quoting *Link v. Wabash R. Co.*, the district court noted that Fed. R. Civ. P. 83 provides that "in all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules" for stayed cases. *Link*, 370 U.S. at 633 n.8. ROA.695. The district court therefore reasonably concluded that "validly issued local rules, or internal court practices under Rule 83, are in accordance with the Supreme Court's *Smith* holding." ROA.695. To that end, the district court demonstrated that its established "practice

regarding stayed cases is to require periodic status updates to ensure the parties are moving towards a resolution." ROA.695.

The district court concluded:

*Smith* still allows a trial court to dismiss a stayed FAA case so long as there is a valid "separate reason" to do so. Further, this Court holds that a valid "separate reason" exists when the court has docket management orders in place and the parties fail to adhere to the court's orders or fail to prosecute their case in arbitration. Thus, *Smith* did not change the controlling law as to the Court's actions here.

ROA.696-67. The district court's analysis of the *Smith* opinion is thorough, well-reasoned, and fully consistent with binding precedent. This Court should affirm the district court's dismissal in its entirety.

However, to the extent this Court were to hold that under *Smith* this case should be stayed, then there would no longer be appellate jurisdiction over Yanez's appeal of the order granting DISH's motion to compel arbitration. As noted in DISH's Jurisdictional Statement, if the case is stayed it would no longer be appealable under this Court's precedent. *See, e.g., Doe v. Tonti Mgmt. Co., L.L.C.,* 24 F.4th 1005 at 1009 (5th Cir. 2022) (holding orders that stay a civil action pending arbitration are "unappealable").

## <u>CONCLUSION</u>

DISH Network L.L.C. and Echosphere L.L.C. respectfully request that the Court affirm the district court's Order granting the motion to compel arbitration and affirm the district court's Final Judgment and Dismissal.

Dated: January 27, 2025                  Respectfully submitted,

                                         */s/David M. Noll*
                                         David M. Noll
                                         Stephanie A. Waller
                                         HAGAN NOLL & BOYLE, LLC
                                         Two Memorial City Plaza
                                         820 Gessner, Suite 940
                                         Houston, Texas 77024
                                         Telephone: (713) 343-0478

                                         Counsel for Defendants-Appellees
                                         DISH Network L.L.C. and
                                         Echosphere L.L.C.

## CERTIFICATE OF SERVICE

I certify that on January 27, 2025, the foregoing document was filed electronically using the Court's CM/ECF Document Filing System, which will give notice of the filing to the following registered CM/ECF users:

Katie P. Klein
William D. Mount, Jr.
DALE & KLEIN, L.L.P.
1100 E. Jasmine, Ste. 202
McAllen, Texas 78501
Telephone: (956) 687-8700

Counsel for Plaintiff-Appellant

*/s/ David M. Noll*
David M. Noll
Counsel for Defendants-Appellees

## ELECTRONIC CERTIFICATION

I hereby certify that in the foregoing brief was filed on January 27, 2025, using the Fifth Circuit's CM/ECF Document Filing System, (1) the privacy redactions required by Fifth Circuit Rule 25.2.13 have been made, (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1, and (3) the document has been scanned for viruses with the most recent version of Bitdefender Endpoint Security Tools and is free of viruses.

*/s/ David M. Noll*
David M. Noll
Counsel for Defendants-Appellees

# CERTIFICATE OF COMPLIANCE

With Type-Volume Limitation, Typeface Requirements,
and Type-Style Requirements

1.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2, this document contains 11,281 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14-point Time New Roman font or larger.

*/s/David M. Noll*
David M. Noll
Counsel for Defendants-Appellees

Dated: January 27, 2025